IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 11-00506 LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FOUINA C. TOILOLO, (01) | ) | |
| ALOALII TOOTOO, (02) | ) | |
| KAISA TAI, (03) | ) | |
| HARRY AKANA, (07) | ) | |
| DANIEL FOLA, (08) | ) | |
| WALTER DOMINGUEZ, (10) | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' JOINT MOTION FOR DISMISSAL
WITH PREJUDICE DUE TO THE GOVERNMENT'S REPEATED
AND CONTINUING DISCOVERY ABUSES
AND VIOLATIONS, FILED DECEMBER 20, 2013**

On December 20, 2013, Defendants Fouina C. Toilolo

("Toilolo"), Aloalii Tootoo ("Tootoo"), Kaisa Tai ("Tai"),

Harry Akana ("Akana"), Daniel Fola ("Fola"), and Walter Dominguez

("Dominguez") (collectively "Defendants") filed their Joint

Motion for Dismissal with Prejudice Due to the Government's

Repeated and Continuing Discovery Abuses and Violations ("Motion

to Dismiss"). [Dkt. no. 793.] Akana filed his Supplemental

Memorandum in Support on December 23, 2013. [Dkt. no. 801.]

Plaintiff the United States of America ("the Government") filed

its memorandum in opposition on December 30, 2013. [Dkt. no.

813.] Defendants filed their joint reply memorandum ("Joint

Reply") on January 2, 2014.  [Dkt. no. 817.]  Tai filed his
counsel's declaration on January 3, 2014, and his joinder in the
Joint Reply on January 6, 2014.  [Dkt. nos. 819, 821.]  Dominguez
filed his supplemental memorandum on January 2, 2014,[1] [dkt. no.
816,] and Toilolo and Tootoo jointly filed a supplemental
memorandum on January 7, 2014 [dkt. no. 823].  This matter came
on for hearing on January 6 and January 8, 2014.

      After careful consideration of the supporting and
opposing memoranda, the exhibits, the arguments of counsel, and
applicable law, this Court orally outlined its decision following
oral argument, with the express statement that the Court's
written order would supercede its oral ruling.  For the reasons
set forth more fully below, the Motion to Dismiss is HEREBY
GRANTED IN PART AND DENIED IN PART.

<u>**INTRODUCTION**</u>

      A lawyer's obligations are set out in the profession's
code of conduct.  At its essence, being a lawyer means
representing clients vigorously and loyally.  A prosecutor
however is charged with much more -- shouldering the compelling
duty to make sure that justice is done.  <u>See</u> <u>Berger v. United
States</u>, 295 U.S. 78, 88 (1935), *overruled on other grounds by*

---

      [1] Dominguez titled the document "Motion to Dismiss-
Supplement; Re: Governmental Misconduct for Walter Dominguez."
This Court construes Dominguez's filing as a supplemental
memorandum in support of Defendants' Motion to Dismiss.

<u>Stirone v. United States</u>, 361 U.S. 212 (1960).  "The prosecutor's job isn't just to win, but to win fairly, staying well within the rules."  <u>United States v. Kojayan</u>, 8 F.3d 1315, 1323 (9th Cir. 1993) (citations omitted).

## BACKGROUND

On October 28, 2013, a final pretrial conference was held with the magistrate judge and, among other things, deadlines were ordered, including:

> The United States shall complete its production of evidence favorable to the Defendant on the issue of guilt or punishment, as required by <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and related authorities and impeachment material, cooperation agreements, plea agreements, promises of leniency and records of criminal convictions, required by <u>Giglio v. United States</u>, 405 U.S. 150 (1972) and is progeny defendants [sic] herein by October 30, 2013.  The United States is under a continuing obligation to produce <u>Brady</u> and <u>Giglio</u> material which may come into its possession right through the trial of this matter.

[Report of Final Pretrial Conference, Minutes & Order, filed 10/29/13 (dkt. no. 584), at 4.]

The instant case was reassigned to this Court on November 5, 2013.  [Dkt. no. 610.]  Jury selection commenced on November 19, 2013, and the jury trial began on November 22, 2013.

From almost the moment that this case was first reassigned, repeated charges of discovery abuse and lack of diligence were lodged against the Government.  This Court has made various rulings regarding these charges, including: imposing

a cut-off date of October 30, 2013 for the disclosure of
discovery; [Minute Order, filed 11/21/13 (dkt. no. 719);]
limiting witnesses and exhibits to those disclosed on or before
October 30, 2013; [Order Granting in Part and Denying in Part
Defendant Toilolo's Motion to Strike Certain Witnesses Disclosed
in United States' Witness List, filed 11/22/13 (dkt. no. 720);]
and not permitting the Government to use transcripts of recorded
conversations until Defendants had the opportunity to have their
expert review the translations and to bring any objectionable
portions before the Court [Order Granting in Part and Denying in
Part Defendant Tootoo's Motion in Limine to Exclude English
Language Translations of Foreign Language Recordings, filed
11/22/13 (dkt. no. 721)].

Even with the rulings, Defendants continued to object
to various other matters and to allege additional discovery
abuse.  As a result, this Court directed Defendants to file an
omnibus motion seeking sanctions for discovery violations by
December 20, 2013.  Defendants, in response, filed the instant
motion.

In their Motion to Dismiss, Defendants provide a litany
of complaints regarding the Government's failure to produce
discovery in a timely manner and in accordance with court-ordered
deadlines.  Defendants argue that the Government's actions merit
a finding that its actions were flagrant and in bad faith.  In

4

short, Defendants submit that the only meaningful sanction for the sheer number and importance of the Government's repeated failures is dismissal of all criminal charges against Defendants with prejudice.

The Government, while conceding that it "has been negligent in complying with its discovery obligations[,]" [Mem. in Opp. at 8,] responds that dismissal of an indictment is a severe and drastic sanction that is generally disfavored, and that this Court should consider a less drastic remedy which is proportional to the violation.  Further, it submits that Defendants cannot demonstrate either that they have suffered substantial prejudice as a result of the Government's failure or that less drastic remedies are not available.

**STANDARD**

Defendants argue that the Government was required but failed to produce discovery pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), <u>Giglio v. United States</u>, 405 U.S. 150, 154–55 (1972), the Jencks Act ("*Jencks*"), and Fed. R. Crim. P. 16.  To establish a <u>Brady</u> violation, three elements – favorability, suppression, and materiality – must be shown.  That is, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  <u>United States</u>

5

v. Olsen, 704 F.3d 1172, 1181 (9th Cir. 2013) (alteration in
original) (citations and quotation marks omitted).  Suppression
may be either intentional or inadvertent, and even "[a]n innocent
failure to disclose favorable evidence constitutes
suppression . . . ." Id. at 1182 (citations omitted).  Evidence
is prejudicial "'only if there is a reasonable probability that,
had the evidence been disclosed to the defense, the result of the
proceeding would have been different.'"  United States v.
Kohring, 637 F.3d 895, 902 (9th Cir. 2011) (quoting United States
v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481
(1985)).

A Giglio violation occurs where the prosecution
suppresses evidence that impeaches a witness's credibility.
Giglio, 405 U.S. at 154.  To establish a Giglio violation, the
same three elements necessary for a Brady violation must be
shown.  Kohring, 637 F.3d at 901.

Materiality, the third element of a Brady/Giglio
violation, can be the most elusive.  "For the purpose of
Brady/Giglio, 'material' and 'prejudicial' have the same
meaning."  Id. at 902 n.1 (citation omitted).  Materiality is
shown where there is "a 'reasonable probability' of prejudice
when suppression of evidence 'undermines confidence in the
outcome of the trial.'"  Id. at 902 (quoting Kyles v. Whitley,
514 U.S. 419, 434, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995)).

*Jencks* requires the government to produce, upon demand and after a government witness has testified at trial, any "statement" made by the witness in the government's possession that relates to the subject matter of the witness's testimony. 18 U.S.C. § 3500.  The term "statement" means:

> (1) a written statement made by said witness and signed or otherwise adopted or approved by him;
>
> (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
>
> (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

Id. § 3500(e)(1)-(3).  The purpose of *Jencks* is to give "criminal defendants a fair opportunity to impeach government witnesses." United States v. Pisello, 877 F.2d 762, 768 (9th Cir. 1989).

Discovery in federal criminal cases is generally governed by Fed. R. Crim. P. 16.  Rule 16 is broader than Brady, "requiring disclosure of all documents 'material to preparing the defense.'" United States v. Muniz-Jaquez, 718 F.3d 1180, 1183 (9th Cir. 2013) (quoting Fed. R. Crim. P. 16(a)(1)(E)(i)).  Rule 16(a)(1)(E) provides for the production of discovery, upon a defendant's request.  It directs:

> [T]he government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any

of these items, if the item is within the government's possession, custody, or control and:

(i) the item is material to preparing the defense;

(ii) the government intends to use the item in its case-in-chief at trial; or

(iii) the item was obtained from or belongs to the defendant.

"Evidence is 'material' under Rule 16 if it is helpful to the development of a possible defense." United States v. Budziak, 697 F.3d 1105, 1111–12 (9th Cir. 2012) (citing United States v. Olano, 62 F.3d 1180, 1203 (9th Cir. 1995)), cert. denied, 133 S. Ct. 1621 (2013). The government is required to provide discovery in its possession or if the "prosecutor has knowledge of and access to the documents sought by the defendant." United States v. Santiago, 46 F.3d 885, 893 (9th Cir. 1995). A "prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant." United States v. Bryan, 868 F.2d 1032, 1036 (9th Cir. 1989).

In the event that this Court does find Brady, Giglio, or Jencks violations, dismissal is within its power to grant. "[First, a] district court may dismiss an indictment on the ground of outrageous government conduct if the conduct amounts to a due process violation. [Second, i]f the conduct does not rise to the level of a due process violation, the court may

8

nonetheless dismiss under its supervisory powers." <u>United States
v. Chapman</u>, 524 F.3d 1073, 1084 (9th Cir. 2008) (alterations in
<u>Chapman</u>) (quoting <u>United States v. Barrera-Moreno</u>, 951 F.2d 1089,
1091 (9th Cir. 1991)).  However, a district court's supervisory
powers are limited to three areas pertinent here: "(1) to
implement a remedy for a violation of recognized rights; (2) to
preserve judicial integrity by ensuring that a criminal
conviction rests on appropriate considerations validly before the
jury; and (3) to deter future illegal conduct." <u>United States v.
W.R. Grace</u>, 526 F.3d 499, 511 n.9 (9th Cir. 2008) (citations
omitted).

Likewise, in the event that the district court finds
that a party committed discovery violations, Rule 16(d)(2)
authorizes sanctions which include ordering that party to permit
the discovery or inspection; granting a continuance; prohibiting
that party from introducing the undisclosed evidence; or entering
"any other order that is just under the circumstances." Fed. R.
Crim. P. 16(d)(2)(A)-(D).

Underlying the directives enunciated by <u>Brady</u>, <u>Giglio</u>,
*Jencks*, and Rule 16 is the overarching principle that the
prosecuting attorney has a duty to be more than a mere advocate
and must, above all, seek to do justice.  The Ninth Circuit has
consistently recognized the vital importance of this
responsibility:

> The Supreme Court has emphasized "the special role
> played by the American prosecutor in the search
> for truth in criminal trials." <u>Strickler v.
> Greene</u>, 527 U.S. 263, 281, 119 S. Ct. 1936, 144 L.
> Ed. 2d 286 (1999).  "A prosecutor has the
> responsibility of a minister of justice and not
> simply that of an advocate.  This responsibility
> carries with it specific obligations to see that
> the defendant is accorded procedural
> justice. . . ."  ABA Model Rules of Professional
> Conduct Rule 3.8 cmt. (2002); <u>accord</u> ABA Standards
> for Criminal Justice 3-1.1(b) (3d. 1993) ("The
> prosecutor is both an administrator of justice and
> an advocate.  The prosecutor must exercise sound
> discretion in the performance of his or her
> functions."); <u>id.</u> at 3.1-1(c) ("The duty of the
> prosecutor is to seek justice, not merely to
> convict"); <u>see also</u> <u>Hayes v. Brown</u>, 399 F.3d 972
> (9th Cir. 2005) ("The prosecuting attorney['s]
> . . . obligation is to govern impartially[,] . . .
> to do justice[,] . . . [and] . . . to assure that
> the defendant has a fair and impartial trial")
> (quoting <u>Commonwealth of The Northern Mariana
> Islands v. Mendiola</u>, 976 F.2d 475, 486 (9th Cir.
> 1992) (citations omitted), <u>overruled on other
> grounds by</u> <u>George v. Camacho</u>, 119 F.3d 1393 (9th
> Cir. 1997) (en banc)).

<u>Campbell v. Rice</u>, 408 F.3d 1166, 1174-75 (9th Cir. 2005)

(Ferguson, J., dissenting) (alterations in <u>Campbell</u>).  A

prosecutor's failure to fulfill discovery obligations, whether

due to mere oversight or to ill intent, defiles our system of

justice and calls into question whether a defendant has been

afforded a fair and impartial trial.  Some courts decree strong

sanctions for these failures.  <u>See, e.g.</u>, <u>United States v. Olsen</u>,

737 F.3d 625, 633 (9th Cir. 2013) (Kozinski, C.J., dissenting)

("We must send prosecutors a clear message: Betray <u>Brady</u>, give

short shrift to <u>Giglio</u>, and you will lose your ill-gotten

conviction."). Others speak eloquently of the need to impel

prosecutors to meet these obligations:

> Brady, this Court has long recognized, is among
> the most basic safeguards brigading a criminal
> defendant's fair trial right. See Cone v. Bell,
> 556 U.S. ----, ----, 129 S. Ct. 1769, 1772, 173 L.
> Ed. 2d 701 (2009). See also United States v.
> Bagley, 473 U.S. 667, 695, 105 S. Ct. 3375, 87 L.
> Ed. 2d 481 (1985) (Marshall, J., dissenting).
> Vigilance in superintending prosecutors' attention
> to Brady's requirement is all the more important
> for this reason:  A Brady violation, by its
> nature, causes suppression of evidence beyond the
> defendant's capacity to ferret out.  Because the
> absence of the withheld evidence may result in the
> conviction of an innocent defendant, it is
> unconscionable not to impose reasonable controls
> impelling prosecutors to bring the information to
> light.

Connick v. Thompson, 131 S. Ct. 1350, 1385 (2011) (Ginsberg, J.,

dissenting).

### DISCUSSION

With this background in mind, the Court turns to each

violation alleged by Defendants:

## I.   Jordan Fonoti

The Government called Mr. Fonoti as its witness on

December 10 and December 11, 2013.  During his testimony,

Mr. Fonoti admitted that he was a member of the drug conspiracy

in which the Government alleges that Defendants are co-

conspirators.  He testified that he pled guilty to the criminal

charges against him without a plea agreement, and that the

Government did not promise him anything in exchange for his testimony.  [Mem. in Supp. of Motion to Dismiss at 3.]

Defendants assert two Brady/Giglio violations regarding Mr. Fonoti: (1) failure to disclose a proffer letter; and (2) failure to disclose false statements that Mr. Fonoti gave to Special Agent James Chambers ("Agent Chambers").  As to the first issue, the Government concedes that it only produced the proffer letter dated June 9, 2011 ("Fonoti Agreement") on December 16, 2013, five days **after** Mr. Fonoti testified at trial, was questioned by both the Government's and Defendants' counsel, and was excused as a witness.  In the Fonoti Agreement, the Government agreed that any statements made by Mr. Fonoti would not be used against him in the Government's case-in-chief in any trial or at sentencing pursuant to a guilty plea.  However, the Government argues that the Fonoti Agreement "has already been admitted into evidence . . . . [and] Mr. Fonoti and [Pulaa] Gatoloai can be recalled to the stand and cross-examined further regarding their proffer letters."  [Mem. in Opp. at 9.]

The Government's failure to produce the Fonoti Agreement is a clear Giglio violation.  It is compounded by the breathtakingly tardy nature of the disclosure.  The Fonoti Agreement impeaches Mr. Fonoti's credibility, the Government suppressed it until after Mr. Fonoti completed his testimony and was excused as a witness, and the suppression was prejudicial

12

because Defendants were denied any opportunity to challenge his credibility regarding the Fonoti Agreement immediately following the Government's direct examination.  While some prejudice can be cured by recalling Mr. Fonoti as a witness and permitting Defendants to cross-examine him regarding the Fonoti Agreement, such action will be bewildering to the jury without some sort of explanation as to why and for what purpose Mr. Fonoti is being recalled to testify.  Therefore, a jury instruction must be given to explain that the Government failed to meet its obligation to produce the Fonoti Agreement before Mr. Fonoti first testified.  Admittedly, however, these efforts do little to address the abject failure by the Government to produce the Fonoti Agreement by the court-ordered pretrial deadline.  The Government's trial counsel himself signed the Fonoti Agreement, but then failed to produce it until well after Mr. Fonoti's testimony was completed.

As to the second issue, Mr. Fonoti testified on cross-examination that he initially gave a "bogus statement" to federal agents in which he made false statements, and he testified that the federal agents took notes and typed up the "bogus statement." After Mr. Fonoti completed his testimony, this Court ordered the Government to provide declarations regarding his initial statement and the existence of any documentation of it. Consequently, the Government filed under seal the prosecutor's declaration which, among other things: confirmed that

13

Mr. Fonoti's initial statement identified neither his co-conspirators nor the contents of the backpacks that he was transporting as part of the conspiracy; and stated that there is no documentation of the initial statement, only notes and an investigation report which reflect Mr. Fonoti's statements given after his initial statement.  [Sealed Decl. of Jonathan Loo, filed 12/12/13 (dkt. no. 767), at ¶ 3.]  This Court also ordered the Government to produce Special Agent Jason Pa's ("Agent Pa") documents regarding Mr. Fonoti, and the Government produced his report dated March 16, 2012 ("Pa Report").  [Mem. in Supp. of Motion to Dismiss at 8; Motion to Dismiss, Decl. of Lynn E. Panagakos ("Panagakos Decl."), Exh. 3.]  Defendants point out that, although the Pa Report was prepared well over nine months after Mr. Fonoti's arrest, it describes his arrest, waiver of rights, consent to search, execution of written statement, and his identification through photographs of alleged co-conspirators.  [Mem. in Supp. of Motion to Dismiss at 8.]  There is no mention, however, of Mr. Fonoti's initial statement following his arrest.  Defendants argue that the failure to notify the defense of the initial statement containing false statements, the concealment of the fact that Mr. Fonoti did not suffer any consequences for his false statements, and the failure to document or otherwise preserve these false statements constitute the Government's suppression of <u>Brady</u> evidence.

14

Mr. Fonoti's initial statement, questionably omitted from any law enforcement notes and reports, included not wanting "to give them no names, so [he] made up a bunch of names." [Panagakos Decl., Exh. 2 (Partial Jury Trial Trans. of 12/11/13) at 19.]  His initial statement is both exculpatory and impeachment evidence, and thus triggers the Government's obligation under Brady/Giglio.  While the initial statement was not memorialized in a written statement, report, or notes, it was known to law enforcement, and the Government's counsel should have disclosed this information by letter as Brady/Giglio material.  Failure to notify defense counsel therefore constitutes a Brady/Giglio violation.  However, the information, though wrongfully suppressed by the Government, was skillfully brought out and explored on cross-examination of Mr. Fonoti by defense counsel.  [Id. at 15-22.]  For reasons unrelated to the issues here, the Court has already ruled that Agent Chambers will be recalled to testify.  He can therefore be subjected to cross-examination regarding the "bogus statement" at that time. Therefore the Court cannot conclude that this suppression of Mr. Fonoti's "bogus statement" was prejudicial.

II.  **Pulaa Gatoloai**

Mr. Gatoloai testified in the Government's case in chief on December 9 and December 10, 2013.  The Government produced, six days after he completed his testimony, his proffer

letter dated June 9, 2011 ("Gatoloai Agreement").  [Mem. in Supp. of Motion to Dismiss at 10; Panagakos Decl., Exh. 1 at 7-10.] Defendants assert the following discovery violations regarding Mr. Gatoloai: (1) failure to disclose the Gatoloai Agreement; (2) failure to disclose Mr. Gatoloai's misconduct while cooperating with the Government in a prior case; and (3) untimely disclosure of photographs shown to Mr. Gatoloai for identification of various defendants.  As to the first issue, the Government concedes that it only produced the Gatoloai Agreement on December 16, 2013 – six days <u>after</u> Mr. Gatoloai testified at trial, was questioned by both the Government's and Defendants' counsel, and was excused as a witness.  In the Gatoloai Agreement, as with the Fonoti Agreement, the Government promised that Mr. Gatoloai's statements would not be used against him in the Government's case-in-chief in any trial or at sentencing pursuant to a guilty plea.  However, the Government argues, the Gatoloai Agreement "has already been admitted into evidence . . . . [and] Mr. Fonoti and Mr. Gatoloai can be recalled to the stand and cross-examined further regarding their proffer letters."  [Mem. in Opp. at 9.]

       As with Mr. Fonoti, the Government's failure to produce the Gatoloai Agreement is a clear <u>Giglio</u> violation for the reasons set forth regarding the Fonoti Agreement.  A jury instruction must also be given to explain that the Government

16

failed to meet its obligation to produce the Gatoloai Agreement before Mr. Gatoloai first testified.

As to the second issue, Defendants contend that the Government failed to disclose Mr. Gatoloai's misconduct, which involved telling his uncle, Packward Toelupe (who was the target of the investigation in which Gatoloai was cooperating), that he should flee the jurisdiction before he could be arrested. [Mem. in Supp. of Motion at 11.] The Government argues that the Court already ordered the production of certain redacted portions of Mr. Gatoloai's presentence investigation report in United States v. Gatoloai, et al., CR 00-00484 DAE ("CR 00-00484"), which contained the information about Mr. Gatoloai's misconduct during his prior cooperation. [Mem. in Opp. at 11.] The Government argues that the information regarding the misconduct was submitted by the prosecutor in Mr. Gatoloai's prior case, and the Government contends that "[a]ny residual prejudice to the defense from not being able to cross-examine him about the extent of his violations can be remedied by recalling Gatoloai . . . ." [Id.] The Government also notes that Toilolo, Mr. Gatoloai's co-defendant CR 00-00484, also violated his cooperation agreement when he too warned Mr. Toelupe. [Id.] Defendants argue that the Government, in its memorandum in opposition to the Motion to Dismiss, discloses for the first time that it: (1) recommended a higher sentence and a finding of obstruction of justice as a

17

result of Mr. Gatoloai's misconduct in the prior case; (2) has recorded statements of Mr. Gatoloai's misconduct; and (3) has additional recorded statements of Toilolo regarding his misconduct in that same prior case.  [Joint Reply at 9-10.]

The Government misses the mark.  The issue is not whether Defendants had sufficient notice from the presentence investigation report about Mr. Gatoloai's misconduct, it is that the Government had written material in its possession that it was compelled by _Giglio_ and _Jencks_ to produce by the appropriate deadline, and certainly before trial commenced.  The Court therefore concludes that the Government's failure to do so violated _Giglio_ and _Jencks_, and the violations were prejudicial.

As to the third issue, the late disclosure of the photographs was in violation of _Brady_ and _Giglio_, but the prejudice was minimal.

## III. **John Tai**

On December 13 and December 16, 2013, weeks after the trial commenced, the Government produced copies of certain e-mail correspondence between the Government's cooperating witness, John Tai, and Agent Chambers.  [Mem. in Supp. of Motion to Dismiss at 19.]  None were produced by the deadline for _Brady_/_Giglio_ material, nor by the deadline for production of _Jencks_ material.  [_Id._]  These e-mails, for obvious reasons, do not openly refer to cooperating with the Government and are

18

written using allusions to writing a screenplay and the like:

> Yes, I've kept all details regarding script and new developments undisclosed... my approach on DreamWorks are [sic] more bringing to realization the need to look at this matter as a changing point for the better (by revamping the character- on their own term), nothing was disclosed regarding moving forward until they make their own commitment... I just wanted you and the team to know in the event that they do.

[Panagakos Decl., Exh. 7 at 4 (some alterations in original).] John Tai was administratively sanctioned at the Federal Detention Center as a result of this conduct.  [Id. at 2.]

While expressing outrage at the behavior of Agent Chambers and maintaining that it is improper for a federal agent to conduct e-mail communication with a defendant in custody, Defendants argue that these communications are exculpatory, impeachment, and *Jencks* material.  Moreover, Defendants submit that the delay in producing these communications until after Agent Chambers testified at trial was severely prejudicial since they were unable to confront him in cross-examination.  Most galling to Defendants is that the e-mail communications reveal John Tai's attempts to contact Dominguez directly to try to persuade him to cooperate with the Government.  Defendants contend, in effect, that John Tai was the cat's paw to influence

Dominguez without his attorney's knowledge and in contravention of the Sixth Amendment.[2]

The Government acknowledges that it was aware of the e-mail correspondence between Agent Chambers and John Tai during the time it took place. However, it denies any knowledge of or direction to John Tai about contacting Dominguez. [Mem. in Opp. at 13.] The Government's counsel affirmatively represented to Defendants' counsel that John Tai took it upon himself to try to get Dominguez "to do the right thing." Once it was discovered that John Tai did so, the Government immediately told him to stop. [Panagakos Decl., Exh. 7 at 2.]

Short of an evidentiary trial, this Court cannot conclude when the Government was first made aware of John Tai's efforts to influence Dominguez and whether, or how soon thereafter, it told him to cease such activity. This, however, is of no moment because the e-mail communications should have been produced to Defendants as *Jencks* and <u>Giglio</u> material.

---

[2] Defendants point to Agent Chambers's April 3, 2013 e-mail to John Tai stating:

> Forgot to mention this yesterday but thought it was important to remind you that you have to be careful when working on the dreamworks project. That company is represented by their own legal team and we have to work through them to get things done. You can have personal discussions regarding the project but nothing official from the production team. . . .

[Panagakos Decl., Exh. 7 at 25.]

John Tai's e-mails are his written statements.  Further, Agent Chambers's e-mails impact his credibility and constitute Giglio material.  The Court therefore concludes that the Government's failure to produce these documents by the appropriate deadline, and certainly before trial commenced, violated its obligations under *Jencks* and Giglio, and the violations were prejudicial.

IV.  **Missed *Giglio* Deadline**

Defendants also maintain that the Government's computer disc entitled, "Giglio", produced on November 8, 2013, was both insufficient and an inexcusable violation of the court-ordered deadline of October 30, 2013.  The Government provides no specific opposition to this argument.

V.  **Additional Rule 16 Violations**

Defendants argue that discovery responsive to the original indictment, filed May 26, 2011, was due in June 2011 and that the Government failed to produce the following discovery in a timely manner: (1) written report of Fola's oral statement (which was not produced until December 5, 2013); (2) subscriber information for the two target telephones (not produced until after October 30, 2013); (3) written summary of expert witness's (forensic chemist) testimony and qualifications (which was not produced until November 21, 2013); (4) Samoan language expert's qualifications (which were not disclosed until November 18, 2013); and (5) photographs shown to witnesses during

interviews (which were produced during trial).  [Mem. in Supp. of
Motion at 29.]  As to the Third Superseding Indictment, filed
August 22, 2013, Defendants submit that discovery was due before
the end of September 2013, but the Government failed to produce
discovery on the new counts and the newly alleged overt acts of
the conspiracy until November 4, 2013 and that the production was
"woefully incomplete."  [Id. at 29-30.]

        The Government responds that "the Court has already
fashioned a sufficient remedy short of dismissal" because: (1) as
to the forensic chemist, pursuant to the Court's order, the
expert witness summaries were disclosed on November 21, 2013, and
the Court ordered that the forensic chemist could not be called
to testify until the defense was prepared to cross-examine him;
(2) as to the Samoan language passages in the transcripts, it
submits that the Court has already ordered the parties to confer
to resolve any disputed translations and delayed testimony from
Government's witness, Amako Malepeai, until the defense consulted
with their own Samoan language expert and had the opportunity
either to object to the Government's version of the transcripts
or to come up with their own version; and (3) as to the failure
to produce documents and exhibits pursuant to Fed. R. Civ. P.
16(a)(1)(E) by the court-ordered deadline, "the Court has already
excluded Exhibits 100 through 129, 134 through 147, 200, 201, 300
through 303, 400 through 402, 408, 409, 638, 704 through 707,

806, 1026 through 1030, and 1300 through 1329." [Mem. in Opp. at 14.]

First, the Court cannot conclude that the Government acted "flagrantly, willfully, and in bad faith." See Chapman, 524 F.3d at 1084-85. After reviewing the record, the Court concludes that the Government has been sloppy, inexcusably tardy, and almost grossly negligent in meeting its discovery obligations. The Government has committed almost all of the discovery violations alleged by Defendants. As previously noted, "[t]he prosecutor has a sworn duty . . . to assure that the defendant has a fair and impartial trial, and his interest in a particular case is not necessarily to win, but to do justice." Id. at 1088 (alteration in original) (citation and quotation marks omitted). The Court is deeply troubled by the Government's conduct and apparent failure to own up to the seriousness of these actions.

Second, Defendants are entitled to a remedy. Although they urge the Court to use its supervisory powers to grant dismissal with prejudice, the Court declines to do so. Dismissal of the indictment is the most severe sanction available. Tai submits that, as in United States v. Aguilar, 831 F. Supp. 2d 1180 (C.D. Cal. 2011), this Court should dismiss for prosecutorial misconduct. The Court disagrees. While in Aguilar, the prosecution (as here) failed to produce Brady and

23

other discovery materials before trial, the misconduct was much
deeper and more prevalent.  The Aguilar court specifically found
that prosecutorial misconduct was so massive and prevailing that
dismissal was the only remedy:

> As demonstrated above, the Government's
> misconduct went way beyond the delayed and
> incomplete production of the Guernsey grand jury
> transcripts.  It included procuring search and
> seizure warrants through materially false and
> misleading affidavits; improperly obtaining
> attorney-client privileged communications;
> violating court orders; questioning witnesses
> improperly; failing timely to produce information
> required under *Jencks*; and engaging in
> questionable behavior during closing arguments.
> Even if the suppression of the Guernsey
> transcripts did not constitute a Brady violation,
> overall the Government's conduct was improper, and
> it warrants exercise of the Court's supervisory
> powers.

Id. at 1206.  Moreover, the district court in Aguilar concluded
that the prosecution's misconduct was so grievously prejudicial
because it wrongfully withheld evidence that could have resulted
in dismissal before trial:  "The belated and incomplete
disclosure of the Guernsey grand jury testimony was
prejudicial . . . [because] it prevented the Lindsey Defendants
from presenting important evidence of potential grand jury bias
to the Court that might have warranted dismissal even before
trial began."  Id. at 1205.  Aguilar is further distinguishable
because the district court found that the case against the
defendants was "far from compelling" and that "[a] clearly
established additional basis for finding prejudice is the

weakness of the Government's case." <u>Id.</u> at 1207 (quoting <u>United
States v. Weatherspoon</u>, 410 F.3d 1142, 1151 (9th Cir. 2005))
(citing <u>United States v. Frederick</u>, 78 F.3d 1370, 1381 (9th Cir.
1996)).  Here, in contrast, the Government's evidence is robust
against several defendants.  For instance, there are:
(1) videotaped recordings of Dominguez and Tai, and audio
recordings of Toilolo and Tootoo, each allegedly discussing drug
distribution; (2) physical evidence of methamphetamine that a
witness testified was obtained from Dominguez; (3) witnesses who
testified that, at Dominguez's direction, they brought and/or
received methamphetamine or proceeds from the sale of
methamphetamine to and from Hawai`i; (4) a witness who testified
that he received proceeds from the sale of methamphetamine from
and delivered methamphetamine to Toilolo; and (5) cooperating
defendants involved in the drug distribution conspiracy who
testified that Toilolo, Tootoo, Tai, and Dominguez were involved
in a drug distribution conspiracy with the cooperating
defendants.

        While deeply troubled by the Government's violations
and repeated failure to produce discovery as required, the Court
finds that lesser, but still significant, sanctions can be
imposed to address the injustice caused by the Government's
misconduct.  These sanctions are: (1) the Government's witnesses
Justin Fonoti, Pulaa Gatoloai, and Agent Chambers shall be

recalled, and Defendants will be permitted to cross-examine them regarding the withheld discovery; (2) Defendants shall be permitted to question the Government's witnesses John Tai and Agent Pa regarding the withheld discovery; (3) a jury instruction shall be given to the jury regarding why these witnesses are being recalled and explaining that the recalls are due to the Government's misconduct; (4) Defendants shall each be permitted to give, at his option, an opening statement after the Government rests its case; and (5) the Court will refer Assistant United States Attorney Jonathan Loo to the Department of Justice, Office of Professional Responsibility regarding the misconduct in this matter.

**CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS IN PART AND DENIES IN PART the Motion to Dismiss.  Specifically, the Motion to Dismiss is GRANTED in that the following sanctions are imposed:  (1) Government's witnesses Justin Fonoti, Pulaa Gatoloai, and Agent Chambers shall be recalled, and Defendants will be permitted to cross-examine them regarding the withheld discovery; (2) Defendants shall be permitted to question Government's witnesses John Tai and Agent Pa regarding the withheld discovery; (3) a jury instruction shall be given to the jury regarding why these witnesses are being recalled and explaining that the recalls are due to the Government's

misconduct; (4) Defendants shall each be permitted to give, at his option, an opening statement after the Government rests its case; and (5) the Court will refer Assistant United States Attorney Jonathan Loo to the Department of Justice, Office of Professional Responsibility regarding the misconduct in this matter.  The Motion to Dismiss is DENIED in all other respect.

   IT IS SO ORDERED.

   DATED AT HONOLULU, HAWAII, March 17, 2014.



   /s/ Leslie E. Kobayashi

   Leslie E. Kobayashi
   United States District Judge

USA V. FOUINA C. TOILOLO, ET AL; CR. NO. 11-00506 LEK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT MOTION FOR DISMISSAL WITH PREJUDICE DUE TO THE GOVERNMENT'S REPEATED AND CONTINUING DISCOVERY ABUSES AND VIOLATIONS, FILED DECEMBER 20, 2013

27